## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOHN S.,

                Claimant,

      v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

             Respondent.

No. 23 C 2041

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

John S.[1] ("Claimant") seeks judicial review of the final decision of the Commissioner of Social Security[2] ("Commissioner"), denying his application for supplemental security income. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 5]. After reviewing the record and the parties' briefs, the Court denies Claimant's Motion for Summary Judgment [ECF No. 13] and grants the Commissioner's Motion for Summary Judgment [ECF No. 17]. The decision of the Commissioner is affirmed.

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

# BACKGROUND

## I.    Procedural History

On February 4, 2021, Claimant protectively filed an application for supplemental security income, alleging a disability beginning February 4, 2020. (R.18). His application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.18). A telephonic hearing was held on September 28, 2022, and all parties participated in the hearing by telephone. Claimant testified at the hearing, and he was represented by counsel. (R.18). A vocational expert also testified at the hearing. (R.18). On November 1, 2022, the ALJ denied Claimant's application for supplemental security income and concluded that he was not under a disability within the meaning of the Social Security Act since February 4, 2021, the date he filed his application. (R.18-27). The Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. Claimant then filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II.   The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for

determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since February 4, 2021, the date he filed his application. (R.20). At step two, the ALJ found Claimant had the following severe impairments: gunshot wound to the abdomen and bilaterial lower extremities with status post surgeries to the femoral artery and bladder; unspecified anxiety disorder; posttraumatic stress disorder; and substance dependence. (R.20). At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled the severity of any listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R.20).

With respect to Claimant's mental impairments, the ALJ undertook the paragraph B analysis and determined that Claimant had moderate limitations in three areas of functioning including: (1) understanding, remembering or applying information; (2) interacting with others; and (3) concentrating, persisting and maintaining pace and he had a mild limitation in (4) adapting and managing himself. (R.21-22). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that he can frequently kneel, crouch, and crawl; can do no more than frequent pushing and pulling with the bilateral upper extremities; can occasionally climb; can understand, remember, and sustain attention and concentration to carry out and adapt to the demands of simple, routine work tasks and simple work-related decision making; cannot perform work tasks that require interaction with the general public; and can work in proximity to coworkers, but not on joint or tandem work tasks.

(R.22). At step four, the ALJ found that Claimant did not have any past relevant work. (R.26). At step five, the ALJ found there were jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of linen room attendant, box bender, and press tender. (R.27). Based on these findings, the ALJ concluded Claimant was not disabled. (R.27).

## DISCUSSION

### I.   Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by

substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." … At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where

conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## ANALYSIS

Claimant argues that remand is required in this case because the ALJ impermissibly played doctor when she assessed his RFC and also failed to develop a full and fair record. For the reasons discussed below, the Court is not persuaded by Claimant's arguments. As a threshold matter, the Court notes there is not a great deal of medical evidence in this case, and there is nothing in the record, including no opinion from any physician, that suggests Claimant is as disabled as he claims. Claimant even acknowledges at the beginning of his initial brief that all of the state agency doctors and consultants who reviewed the medical records that Claimant submitted in support of his application concluded there was insufficient evidence in the record to make any determination regarding Claimant's allegations of disability, and Claimant did not submit any opinion from a treating physician. Claimant's Brief [ECF No. 14], at 2 (citing R.65-72).

Claimant's first argument is that the ALJ impermissibly "played doctor" when she evaluated the medical evidence and determined Claimant's RFC without the benefit of any opinion from a medical professional assessing his functional abilities and alleged limitations. However, the law does not require an ALJ to rely on or adopt a physician's opinion when making an RFC assessment. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("An ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of the claimant's physicians."). This is because the RFC determination "is a legal – and not a medical – decision that is exclusively within the ALJ's authority to make." *Michael B. v. Berryhill*, 2019 WL 2269962, at *6 (N.D. Ill. May 28, 2019).[3] The law requires the ALJ to weigh the record evidence and draw appropriate inferences from the record evidence to carry out her function as factfinder. *See Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010) ("The ALJ, however, is not only allowed to, but indeed must, weigh the evidence and make appropriate inferences from the record."). "[T]he critical question is not whether the ALJ's RFC conclusions match a medical expert's opinion item-by-item but whether substantial evidence supports what the ALJ ultimately concluded about the claimant's RFC." *Michael B.*, 2019 WL 2269962, at *6.

---

[3] *See also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide."); *Lawrence P. v. Saul*, 2019 WL 3554451, *4 (N.D. Ill. Aug. 5, 2019) (stating that the final responsibility for determining a claimant's RFC is a legal conclusion reserved to the Commissioner).

Here, the ALJ weighed the medical evidence Claimant submitted and considered that evidence in conjunction with Claimant's testimony at the hearing. *See Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010) ("The ALJ, however, is not only allowed to, but indeed must, weigh the evidence and make appropriate inferences from the record."). The ALJ did not dismiss or reject any medical opinion evidence; there simply was no opinion evidence to consider. The ALJ further explained:

> The evidence shows that the claimant has a history of gunshot wounds to the abdomen and bilateral legs with multiple surgeries. The treatment records document some complaints of slight abdominal cramping, but the *physical examinations generally show normal findings, including normal range of motion, normal strength, no tenderness, and no swelling.* At the hearing, the claimant testified that he has issues with pushing/pulling as the result of his abdominal gunshot wounds, which has also been accounted for in his residual functional capacity. Notably, the medical evidence of record related to the claimant's gunshot wounds end[s] in 2017 and the *more recent treatment records from the period when the claimant was incarcerated reflect no physical issues. The record does not contain any opinions from any source indicating that the claimant has greater limitations than have been provided in the claimant's residual functional capacity.* The longitudinal record does not support greater limitations than have been provided in the claimant's residual functional capacity.

(R.22-23) (emphasis added). The Court cannot say the ALJ's evaluation and conclusions are not supported by substantial evidence. The ALJ did exactly what she was supposed to do under these circumstances; she weighed the medical evidence, considered Claimant's testimony, and then crafted an RFC and concluded:

> Based on the overall evidence, restrictions to work at the medium exertional level with frequent kneeling, crouching, and crawling, no more than frequent pushing and pulling with the bilateral upper extremities, and occasional climbing due to his history of abdominal and leg gunshot wounds have been provided in the claimant's residual

functional capacity to account for limitations caused by the claimant's gunshot wound related impairments.

(R.23).

The Seventh Circuit's recent decision in *DuCharme v. Kijakazi* supports the conclusion that the ALJ may assess medical evidence without guidance from a medical expert, especially when that evidence is not complex and does not support any significant limitation or change in a claimant's condition. 2022 WL 3287974, at *2 (7th Cir. Aug. 11, 2022). The Court is not persuaded that the ALJ committed any error when making her RFC determination on this record and finds that she provided sufficient explanation for her conclusions.

As to Claimant's mental impairments, the ALJ explained that the longitudinal record is consistent with finding that Claimant's mental impairments cause no more than moderate limitations on his ability to perform work-related activated with regard to understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace. (R.24). And the ALJ specifically concluded:

> Based on the evidence, restrictions to understanding, remembering, and sustaining attention and concentration to carrying out and adapting to the demands of simple, routine work tasks and simple work-related decision making, no performing work tasks that require interaction with the general public, and working in proximity to coworkers, but not on joint or tandem work tasks have been provided in the claimant's residual functional capacity to account for limitations caused by his mental impairments.

(R.25). This conclusion in based on the ALJ's weighing the evidence and her evaluation of Claimant's medical records, his activities of daily living, Claimant's

testimony, and that fact that there is no opinion from any medical professional finding Claimant was disabled.[4]

The ALJ also considered a third-party function report submitted by Claimant's sister in which the sister noted that Claimant has difficulty lifting heavy items and standing for some unspecified amount of time. (R.25). The ALJ noted, however, that Claimant's sister said that Claimant did not have any problems caring for his personal needs or hygiene and could use public transportation, shop in stores, and manage money matters. (R.25). The ALJ also noted Claimant's sister said that he did not need any reminders to take care of himself, take medicine, or when going places. (R.25). His sister also noted that Claimant did not have any issue getting along with others, including authority figures. (R.25). The ALJ explained that she considered these statements because they "provide insight into the severity of Claimant's impairment and how his ability to function is affected." (R.26).

In the Court's view, the ALJ performed a thorough and careful review of the entire record and found that the objective medical evidence did not support Claimant's allegations of disability, and Claimant does not point to any evidence the ALJ did not consider. Ultimately, this is a case in which the evidence Claimant submitted did not support his claims that he was disabled at the time he filed his

---

[4] As to Claimant's activities of daily living, the ALJ noted that Claimant "can wash laundry, take out the garbage, and use public transportation." He also testified that "he has difficulty getting dressed because he has to sit down to put his legs into pants because of his abdominal issues." (R.25). The ALJ explained that  the Claimant's "ability to perform these activities does not solely support finding that he is able to perform medium work with the additional restrictions noted in his residual functional capacity, it is just another factor I have considered in reaching this decision." (R.25).

application for supplemental security income. The ALJ concluded that the requisite evidence was lacking, and this Court cannot, under applicable law, reconsider that conclusion. There simply is very little medical evidence in the record, and certainly not enough evidence sufficient to prove a disability. For all of these reasons, the Court finds that the ALJ's conclusions are supported by substantial evidence and the ALJ was not required to do anything more.

Claimant also argues that the ALJ failed to develop a full and complete record. The Court is not persuaded by this argument either. Claimant and the ALJ share responsibilities for building the record, and it is Claimant's burden to submit medical evidence to prove his disability. *See Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004) (recognizing that the claimant has the burden in steps one through four); 20 C.F.R. § 404.1512(a)(1).[5] When a claimant is represented by counsel at the administrative hearing, the Seventh Circuit permits the ALJ to assume the claimant is making his strongest case for benefits. *See Wilkins v. Barnhart,* 69 F. App'x 775, 781 (7th Cir. 2003); *see also Skinner v. Astrue,* 478 F.3d 836, 844 (7th Cir. 2007) (holding that a claimant bears the burden to introduce objective evidence that an ALJ

---

[5] *See* 20 C.F.R. § 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); *see also Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty ...."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove the claim of disability.");; *Davenport v. Berryhill*, 721 F. App'x 524, 527 (7th Cir. 2018) (holding that the claimant bears the burden of establishing the existence of a severe impairment through medical records); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) ("It was [claimant]'s burden to present medical evidence supporting h[is] claim of disability.").

should have developed the record further particularly when a claimant is represented by counsel).

The ALJ questioned Claimant at the hearing and gave him every opportunity to meet his burden and to elaborate on the nature, frequency, and intensity of his symptoms and any related functional limitations. And based on the record evidence and Claimant's testimony at his hearing, the ALJ included some limitations and restrictions in the RFC to accommodate Claimant's allegations. Moreover, as sated above, because Claimant was represented by counsel at the hearing, he is presumed to have made his best case before the ALJ. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). In the Court's view, the record includes more than sufficient evidence to support the ALJ's conclusions, and Claimant has not identified any evidence the ALJ should have considered or any missing evidence that would render the record incomplete. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

Claimant also argues that the ALJ should have scheduled a consultative examination or engaged a medical expert to develop a more complete record. An ALJ's decision whether to consult a medical expert, however, is discretionary, and the law is clear that an ALJ is not required to consult a medical expert when the record is adequate to render a decision. *See* 20 C.F.R. § 404.1527(e)(2)(iii) (stating that an ALJ may, but is not required to, seek the opinion of a medical expert); *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004). The Court is unwilling to find that the

ALJ should have consulted a medical expert in this case, a request that Claimant's counsel never made to the ALJ at the hearing or otherwise, and Claimant is represented by the same law firm in this appeal who represented him at the administrative level. *See Halsell v. Astrue*, 357 Fed. App'x 717, 723 (7th Cir. 2009) ("[T]he ALJ was permitted to assume that [the claimant], who has always been represented by counsel, was 'making the strongest case for benefits,' so it was not improper for her to draw a negative inference from the fact that no treating physician opined that [the claimant] is disabled.").

Based on the facts of this case, the Court is not persuaded the ALJ should have sought, or was required to seek, additional medical opinion evidence to assess Claimant's RFC. Rather, the Court finds the ALJ reasonably concluded there was sufficient evidence in the record to assess Claimant's RFC and she provided the logical bridge between the record evidence and her conclusions. When presented with a similar argument from a claimant that additional medical testimony from an expert was required, another court in this district made the following observations, equally applicable here:

> Counsel should not sit silently at a hearing, fingers crossed, hoping for an ALJ error. Instead, they should zealously advocate for their clients. In doing so, counsel should identify alleged errors to the ALJ so that if an error truly occurred, the ALJ can promptly rectify the error. Waiting years to raise an alleged error on appeal does not further an applicant's interest.

*Miller v. Colvin*, 2015 WL 1915658, at *6 (N.D. Ill. April 27, 2015) (Johnston, M.J.). And that court ultimately concluded the ALJ did not "abuse[] his discretion in not ordering a consultative examination or calling a medical expert to testify at the

hearing." *Miller*, 2015 WL 1915658, at *6. This Court similarly concludes that the ALJ did not commit any reversible error in this case.

## CONCLUSION

Accordingly, for all of the reasons set forth above, Claimant's Motion for Summary Judgment [ECF No. 13] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 17] is granted. This decision of the Commissioner is affirmed, and this case is closed.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 27, 2025

14